(142 App. Div. 541.)

### BEVAN v. ROACH.

(Supreme Court, Appellate Division, Second Department.   January 31, 1911.)

EVIDENCE (§ 155*)—ADMISSION BY REASON OF EVIDENCE OF ADVERSE PARTY.
Plaintiff and her witnesses, in an action for fraudulent representations, whereby she was induced to make a certain purchase, having been allowed to state what was said to her and them by defendant, and it being conceded by plaintiff that her husband, since deceased, was her agent in the purchase, and whether he was not the purchaser himself being a vital issue, defendant was entitled to give his version of the transaction, and could not be limited to interviews with plaintiff and her witnesses, but could testify to the information he had got before making any representations, and what he said to plaintiff's husband respecting it.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 445–458;  Dec. Dig. § 155.*]

Appeal from Trial Term, Kings County.

Action by Marie A. Bevan against John J. Roach.   From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals.   Reversed, and new trial granted.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

John P. East, for appellant.

John Larkin (R. S. Hull, on the brief), for respondent.

PER CURIAM.   The plaintiff alleges that defendant made false and fraudulent representations to induce her to buy certain stock, and that, relying thereon, she purchased the same.   The burden was with the plaintiff to show (1) that defendant made material representations to induce the purchase of the stock;  (2) that defendant knew that they were untrue;  (3) that plaintiff relied thereon in making the purchase;  and (4) that she was damaged thereby.

The false representations charged in the complaint are that certain prominent persons controlled the corporation, the stock of which was

sold, who had or would obtain advantageous contracts; that one of them was defendant's close friend, and that from him he had specific information, and that such persons were about to advance the price in the market, and that defendant could procure for the plaintiff a small quantity of the stock, which was difficult to secure; that defendant had purchased $15,000 of the stock, which he intended to hold for an increase in the market value, and that he had "special inside information as to the operations of said company, which he was not at liberty to disclose to said plaintiff, but that the said stock would be worth by May 1, 1908, more than ten times its value at that time, and further offered, in case the plaintiff would purchase any of said stock, that he, the said defendant, would repurchase the same at the price paid therefor by the plaintiff at any time that he might be requested by her so to do." The negotiations for the purchase of this stock were conducted largely, and, as defendant claims, altogether, by plaintiff's husband, who is deceased, although the plaintiff states that she participated in the matter, and that representations were made to her. Indeed, the court charged:

"Her husband did the whole business. One can do by another what they can do by themselves. Does the evidence in the case make out the purchase by her, her husband attending to it for her?"

Although the plaintiff and her witnesses were afforded full opportunity to state what was said to her and them, the defendant was not permitted to testify to his conversations with the husband, who was conceded by the plaintiff to be her agent in the matter of the purchase. Indeed, a vital issue is whether the husband was not the purchaser himself, and the court ruled that such was the case as to 1,000 shares of the stock. The defendant was entitled to give his version of the transaction, and was not limited merely to interviews with the plaintiff, or such witnesses as she saw fit to call to narrate conversations with the defendant.

It is charged in the complaint that defendant stated that he had special inside information, and that the stock would greatly increase in value; and plaintiff testified to statements by the defendant as to her extreme good fortune in possessing the stock, and that she would be a very wealthy woman by the 1st of May, 1908. One Dunn testified to conversations with the defendant in reference to the wealth that would accrue to plaintiff, and as to the future value of the stock. One Morrissey, plaintiff's brother, testified to a conversation with defendant wherein he made certain statements, among others what he (defendant) had said to Mr. Bevan as to the advance in price of the stock, and as to the prospects of the company. Notwithstanding this, the defendant, accused of false statements, was not permitted to testify as to his information respecting the stock, some of which was obtained by letter before the sale of the stock, nor was he suffered to state what he told Mr. Bevan respecting it. So, perchance, the defendant was found guilty of making a fraudulent statement without opportunity to show that he had information justifying it. So the plaintiff was allowed to produce evidence of statements to her and others, while the defendant was denied the opportunity to state con-

versations with Mr. Bevan, which, as he would contend, could be adopted by the jury for his vindication.

For such errors, it is considered that the judgment and order should be reversed, and a new trial granted; costs to abide the event.

